UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH A. COLLINS,<br><br>                     Plaintiff,<br><br>v.<br><br>RICHARD V. SPENCER,<br><br>                   Defendant.<br>—————————————————<br>AND ALL CONSOLIDATED CASES | Case No.: 17-CV-1723 JLS (KSC)<br><br>**ORDER (1) DENYING PLAINTIFF'S REQUEST FOR ORAL ARGUMENT, (2) OVERRULING PLAINTIFF'S EVIDENTIARY OBJECTIONS, AND (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 21, 26) |

Presently before the Court is Defendant Richard V. Spencer's Motion for Summary Judgment ("Def.'s Mot.," ECF No. 21), as well as Plaintiff Joseph A. Collins' Opposition ("Opp'n," ECF No. 24) and Defendant's Reply ("Reply," ECF No. 25). Also before the Court are Plaintiff's Evidentiary Objections (ECF Nos. 24-2, 24-3, 24-4, 24-5) and Request for Oral Argument on Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Mot.," ECF No. 26). Having carefully considered the Parties' arguments, the evidence, and the law, the Court **DENIES** Plaintiff's Motion,[1] **OVERRULES** Plaintiff's Evidentiary Objections, and **GRANTS** Defendant's Motion.

---

[1] Plaintiff "requests the opportunity to dispute the credibility of the Supplemental Declaration of Fredrick Asuncion" and "believes that the Court's decision-making process would be significantly aided by oral argument." Pl.'s Mot. at 1–2. The Court does not make credibility determinations in ruling on a motion

# BACKGROUND

## I. Undisputed Facts

Plaintiff is a white male born on October 27, 1951. Def.'s Separate Stmt. of Undisputed Facts in Support of Def.'s Mot. ("Def.'s Facts," ECF No. 21-2) No. 1; Opp'n at 3. On January 31, 2011, the United States Department of the Navy (the "Navy") hired Plaintiff as a civilian employee for the position of Sheet Metal Worker. Def.'s Facts No. 2; Opp'n at 3.

On January 29, 2012, the Navy temporarily promoted Plaintiff to Aircraft Sheet Metal Repair Inspector. Def.'s Facts No. 3; Opp'n at 4. The Navy permanently promoted Plaintiff to that position on March 10, 2013. *Id.* Plaintiff declined the promotion for personal reasons. Opp'n at 4.

In May 2014, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint, Case No. 14-65888-01141. Decl. of Sara Salas ("Salas Decl.," ECF No. 21-10) ¶ 2. Plaintiff alleged "[n]epotism in selection for Aircraft Examiner Position" and that he was "[w]ritten up for not wearing [personal protective equipment and] . . . disruptive behavior." *Id.*

In March 2015, Plaintiff served as an Aircraft Sheetmetal Repair Inspector for the Vertical Lift Program CH-53 platform at the Naval Air Station North Island. Decl. of Joseph A. Collins ("Collins Decl.," ECF No. 24-6) ¶ 2. In April 2015, Gary Thompson, Aircraft Overhaul & Repair Supervisor, and Jesse Tran, Aircraft Sheetmetal Work Leader, were assigned as Plaintiff's supervisor and work leader, respectively. *Id.* ¶ 3. Plaintiff

---

for summary judgment. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Further, where, as here "a party has [had] an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in a refusal to grant oral argument]." *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (alterations in original) (quoting *Lake at Las Vegas Investors Grp, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991)); *accord Singh v. U.S. Postal Serv.*, 713 F. App'x 661 (9th Cir.) (affirming district court's denial of request for oral argument where the plaintiff "submitted arguments in his opposition to defendant's motion for summary judgment"), *cert. denied*, 139 S. Ct. 446 (2018); *see also* Fed. R. Civ. P. 78(b); S.D. Cal. CivLR 7.1(d)(1). The Court therefore **DENIES** Plaintiff's Motion.

claims that Mr. Thompson and Mr. Tran created a hostile work environment.  *See* Def.'s Facts No. 6; Collins Decl. ¶ 4; First Am. Compl. ("FAC," ECF No. 11) at 2–4.  Specifically, Plaintiff alleges that Mr. "Tran placed the Plaintiff under constant surveillance in an attempt to intimidate the Plaintiff"; Mr. "Tran[] and [Mr.] Thompson attempt[ed] to provoke the Plaintiff into a confrontation that would result in a progressive disciplinary action"; and, "[o]n July 6, 2015, Plaintiff received a Letter of Reprimand from [Mr.] Thompson for inappropriate behavior towards [Mr.] Tran."  FAC at 3.  Additionally, at his deposition, Plaintiff testified that Mr. Tran had mocked him about his age, calling him an "old man" and "over the hill."  Dep. of Joseph Collins ("Collins Dep.," ECF No. 21-13) at 61:1–15.  Plaintiff also testified that Mr. Tran stopped calling him "old man" in "March or April of 2015," *id.* at 66:13–19, and "over the hill" in 2014.  *Id.* at 68:1–4. Additionally, Mr. Thompson, who is black, *see id.* at 102:3, referred to white people as "crackers" and "honky," *id.* at 108:1–12, although Plaintiff did not hear him make such comments after 2012.  *Id.* at 110:3–21.

Plaintiff initiated EEO Case No. 15-65888-01875 on April 24, 2015, which concerned the "[p]romotion of Jesse Tran to Work Leader."  Salas Decl. ¶ 2.  On May 6, 2015, Plaintiff and the Navy entered into a Settlement Agreement of EEO Case Nos. 14-65888-01141 and 15-65888-0175.  Def.'s Facts No. 7; *see also* Def.'s Ex. 1, ECF No. 21-12.  In paragraph 3 of the Settlement Agreement, Plaintiff agreed to "release the Agency from any and all claims or demands he may have with the Agency occurring prior to the effective date of this Agreement. . . . [including] a release of any rights under Title VII of the Civil Rights Act of 1964. . . ; [and] the Age Discrimination in Employment Act."  Def.'s Facts No. 8; *see also* Def.'s Ex. 1 at 1.

From August 9 through December 5, 2015, Plaintiff was temporarily detailed to an Aircraft Examiner position pursuant to the Settlement Agreement.  Def.'s Facts No. 4; Collins Decl. ¶ 8.  On September 8, 2015, Plaintiff filed EEO Case No. 15-65888-02321, alleging "[h]arassment by Jesse Tran (Sheet Metal Mechanic Leader) and Gary Thompson (Aircraft Overhaul and Repair Supervisor)."  Salas Decl. ¶ 2.  The Navy's EEO Office

ruled against Plaintiff on July 10, 2017, concluding "that management articulated legitimate, nondiscriminatory reasons for its actions, and that the preponderance of the evidence does not support Complainant's claims of unlawful discrimination." Def.'s Ex. 14, ECF No. 21-25, at 29.

On October 17, 2015, Plaintiff applied for a permanent Aircraft Examiner position. Def.'s Facts No. 13; Collins Decl. ¶ 9. The Navy appointed a Selecting Official, Frederick Asuncion, and a three-person Advisory Panel, comprised of Robert Amaichigh, Joey Baesas, and Matt Pendleton, to review the resumes of the applicants and make the selections for the Aircraft Examiner position. Def.'s Facts No. 14. Mr. Asuncion provided the Advisory Panel members with the resumes of all the applicants with their names redacted and replaced by letters and a list of pre-determined Advisory Panel Criteria against which to evaluate the resumes. Def.'s Facts No. 15. Each Advisory Panel member then individually reviewed the redacted resumes and assigned a numerical score for each of the pre-determined Advisory Panel Criteria. Def.'s Facts No. 16. The Advisory Panel members recorded their individual scores for each evaluation criteria on a matrix. Def.'s Facts No. 17. After individually scoring the resumes, the Advisory Panel members met to discuss their individual scores, arrive at a consensus score for each resume, and record the consensus scores on their matrices. Def.'s Facts No. 18.

The resume blind-coded as "Applicant K" belonged to Plaintiff and received individual scores of 55 (from Mr. Amaichigh), 50 (from Mr. Baesas), and 40 (from Mr. Pendleton), with a consensus score of 45. Def.'s Facts No. 19. On his separate review of the resumes, Mr. Asuncion awarded Plaintiff an additional 10 points, for a final score of 55. Def.'s Facts No. 20. The highest-rated resume for the Aircraft Examiner position in Plaintiff's platform of experience was "Applicant D" (Tien Bui), who received individual and consensus scores of 70. Def.'s Facts No. 21. Mr. Asuncion agreed with the Advisory Panel's recommendation and selected the top-ranked candidate, Applicant D, for the Aircraft Examiner position in the platform for which Plaintiff competed. Def.'s Facts No. 22.

Neither Mr. Baesas nor Mr. Pendleton recognized the resume of Applicant K as belonging to Plaintiff or the resume of Applicant D as belonging to Mr. Bui. Def.'s Facts No. 23. They also did not know of Plaintiff's prior EEO activity. Def.'s Facts No. 24. Mr. Amaichigh recognized the resume of Applicant K as likely belonging to Plaintiff and also knew that Plaintiff had some prior EEO activity, although he did not know the details of Plaintiff's EEO acitvty. Def.'s Facts No. 25. Mr. Amaichigh did not recognize the resume of Applicant D as belong to Mr. Bui, whom he did not know and with whom he had never worked. Def.'s Facts No. 27.

On November 13, 2015, Plaintiff was scheduled to participate in an Aircraft Examiner training related to the Maintenance and Repair Overhaul ("MRO") system. Collins Decl. ¶ 11; Affidavit of Arlene Sexton ("Sexton Aff.," ECF No. 25-4) at 1. Ms. Sexton indicated to Mr. Amaichigh that "it would not make sense for someone who did not have either an MRO log-in, a Made to Order (MTO) log-in, or a completed background investigation to attend" the training. Sexton Aff. at 3. Consequently, Mr. Amaichigh instructed Plaintiff not to attend the training. Def.'s Facts No. 31; Collins Decl. ¶ 11.

On November 17, 2015, Mr. Amaichigh announced in front of Plaintiff's co-workers that Mr. Bui had been selected for the permanent Aircraft Examiner position. Collins Decl. ¶ 12. On April 14, 2016, Plaintiff filed EEO Case No. 16-65888-00881, concerning his "[n]on-selection for Aircraft Examiner and Sheet Metal Mechanic (Aircraft) Leader positions." Salas Decl. ¶ 2. On July 27, 2017, the Navy's EEO Office ruled against Plaintiff, finding that "Complainant's allegations are not supported by the totality of the record and he failed to present any plausible evidence that would demonstrate that management's reasons for its actions were factually baseless or not its actual motivation." Def.'s Ex. 15, ECF No. 21-26, at 21.

Since December 6, 2015, Plaintiff has worked as an Aircraft Sheet Metal Inspector. Def.'s Facts No. 5.

/ / /

## II.    Procedural Background

Following the EEO Office's denial of his claims, Plaintiff filed two complaints in this Court, *Collins v. Spencer*, No. 17-CV-1723 JLS (KSC) (S.D. Cal. filed Aug. 25, 2017), and *Collins v. Spencer*, No. 17-CV-1724 JLS (KSC) (S.D. Cal. filed Aug. 25, 2017).  On a joint request by the Parties, *see* ECF No. 8, the Court consolidated the two actions.  *See* ECF No. 9.

On January 24, 2018, Plaintiff filed the operative First Amended Complaint, alleging two claims for relief.  *See generally* ECF No. 11.  In "Allegation I," Plaintiff alleges that he "was subjected to a hostile work environment and in retaliation for participating in protected activities."  *See id.* at 1; *see also generally id.* at 2–4.  In "Allegation II," Plaintiff claims that he was not "select[ed] for a promotion and . . . deni[ed] . . . a training course in retaliation for participating in protected activities."  *See id.* at 1; *see also generally id.* at 4–7.

After engaging in discovery, *see* ECF Nos. 16, 18, Defendant filed the instant Motion for Summary Judgment on March 25, 2019.  *See generally* ECF No. 21.  On April 2, 2019, the Court issued an Order setting a briefing schedule on Defendant's Motion, advising Plaintiff of his obligations under Federal Rule of Civil Procedure 56, and taking Defendant's Motion under submission on the papers pursuant to Civil Local Rule 7.1(d)(1).  *See generally* ECF No. 22.  Plaintiff filed his Motion requesting oral argument on May 20, 2019.  *See generally* ECF No. 26.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense.  Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson*, 477 U.S. at 248.  A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

## ANALYSIS

Defendant seeks summary judgment as to all claims alleged in Plaintiff's First Amended Complaint. *See* ECF No. 21 at 1. The Court therefore analyzes each of Plaintiff's claims after addressing Plaintiff's evidentiary objections.

/ / /

/ / /

## I. Plaintiff's Evidentiary Objections

Plaintiff filed oppositions to the Declarations of Fredrick Asuncion (ECF No. 24-2), Robert Amaichigh (ECF No. 24-3), Joey Baesas (ECF No. 24-4) and Matt Pendleton (ECF No. 24-5) (together, the "Evidentiary Objections").

### A. The "H53/V22" Objection

Generally, the Evidentiary Objections claim that the statements concerning the recommendation of Applicant D (Mr. Bui) as having the highest score for the Vertical Lift H53 platform are false because the Advisory Panel actually recommended Applicant D for the V22 platform. *See generally* ECF Nos. 24–2–5. In support of this contention, Plaintiff relies on Document USA-01899 ("Def.'s Ex. 16," ECF No. 25-3), a Memorandum from the Advisory Panel dated "November XX, 2015," with a handwritten ranking indicating that "Bui, Tien" was "recommend[ed]" for the "V22 (Miramar)" and that "Khamsingsavath, Khamphet" was recommended for the "H53" platform. *See* Def.'s Ex. 16.

On reply, Defendant explains that "Exhibit 16 accurately identifies the individuals selected for the two Vertical Lift Aircraft Examiner positions (i.e., Mr. Bui and Mr. K[ha]msingsavath), but has a handwritten notation that incorrectly suggests that Mr. K[ha]msingsavath was assigned to the H53 platform." Reply at 4 n.2 (citing ECF No. 25-1 ¶ 7). Defendant also clarifies that "Mr. Bui was assigned to the V22 platform in January 2016 to meet the then-existing operation needs of the Navy." *Id.* at 3 (citing ECF No. 25-1 ¶ 6).

Based on the foregoing, the Court **OVERRULES** Plaintiff's objection. The Certificate Coding, Resume Grading Sheets, and declarations and affidavits of the Selecting Official and Advisory Panel members all reflect that Mr. Bui was being considered for the Vertical Lift H53 platform. *See* ECF Nos. 21-6–9, 21-17–24. A single, handwritten notation on what appears to be a draft memorandum does not raise a dispute of fact, much less a material one.

/ / /

### B.    The "Applicant B" Objection

Plaintiff also notes that Mr. Amaichigh declared in paragraph 12 of his declaration that the panel recommended that Mr. Asuncion select Applicant B, who was selected for the TACAIR platform but whose name does not appear on the Recommendation Memorandum.  *See generally* ECF No. 24-3.  This was clearly a mistake—paragraph 12 of the Amaichigh Declaration notes that, "[b]ased on the consensus scores, the panel recommended to Mr. Ascuncion that he select Applicant B, Tien Bui, for the Vertical Lift platform."  ECF No. 21-7 ¶ 12.  It is clear that Mr. Amaichigh is referring to Mr. Bui, whom the evidence indicates was "Applicant D."  *See id.* ¶ 9.  Applicant B is nowhere discussed in the Parties' briefing and appears to hold no relevance to the instant dispute. The Court therefore **OVERRULES** Plaintiff's objection to paragraph 12 of the Amaichigh Declaration.

## II.    Allegation I

Plaintiff's claims in Allegation I allege "a hostile work environment" and "retaliation."  *See* FAC at 1.  In addition to the allegations in his First Amended Complaint, *see* FAC at 2–4, Plaintiff testified at his deposition to conduct that may have constituted a hostile work environment.  *See, e.g.*, Collins Dep. at 61:1–15, 66:7–19, 68:1–4, 108:1–12, 110:3–21.

### A.    Hostile Work Environment

"To prevail on a hostile workplace claim premised on . . . race . . . , a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial . . . nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment."  *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004).  Similarly, "[t]o prevail on an age-based hostile workplace/harassment claim, [the plaintiff] must show that []he was subjected to verbal or physical conduct of an age-related nature, that the conduct was unwelcome, and that the conduct was sufficiently severe or pervasive to alter the conditions of h[is] employment

and create an abusive work environment." *Cozzi v. Cty. of Marin*, 787 F. Supp. 2d 1047, 1069 (N.D. Cal. 2011) (citing *Vasquez*, 349 F.3d at 642). "[C]ommonly necessary personnel management actions such as hiring and firing, job or project assignments, . . . promotion or demotion, [and] performance evaluations, . . . do not come within the meaning of harassment." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013) (quoting *Reno v. Baird*, 18 Cal. 4th 640, 646–47 (1998)).

### 1. Conduct Alleged in Plaintiff's Amended Complaint

In his Amended Complaint, Plaintiff alleges that Work Leader ("WL") Jesse Tran and Production Supervisor ("PS") Gary Thompson created a hostile work environment. *See* FAC at 1, 2–4. Specifically, Plaintiff alleges that Mr. "Tran placed the Plaintiff under constant surveillance in an attempt to intimidate the Plaintiff and report his findings to [Production Supervisor] Thompson" after Plaintiff had "voiced his concerns . . . in regards to past conflicts with WL Tran and PS Thompson and their bias[ed] attitudes toward Plaintiff in regards to Plaintiff's race and age." *Id.* at 2–3. Further, "WL Tran[] and PS Thompson attempted to provoke the Plaintiff into a confrontation that would result in a progressive disciplinary action." *Id.* at 3. Finally, "[o]n July 6, 2015, Plaintiff received a Letter of Reprimand from PS Thompson for inappropriate behavior towards WL Tran," who "accused Plaintiff of using inappropriate language when WL Tran asked the Plaintiff if he had submitted a leave request for an upcoming vacation." *Id.* at 3–4.

Defendant contends that "[t]he conduct alleged in Plaintiff's Amended Complaint does not satisfy the elements of a legally cognizable hostile work environment claim" because "[n]othing about the conduct alleged is racial . . . or age-related in nature." Def.'s Mot. at 5–6. Rather, "[a]ll of [Plaintiff's] allegations relate to 'business or personnel management,' and, therefore, 'do not come within the meaning of harassment.'" *Id.* at 6 (quoting *Lawler*, 704 F.3d at 1244).

Plaintiff does not oppose this argument. *See generally* Opp'n. Under Ninth Circuit precedent, the Court may therefore dismiss Allegation I, to the extent it is predicated on the allegations in Plaintiff's First Amended Complaint, as abandoned. *See, e.g.*, *Jenkins v.*

*Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (dismissing causes of action as abandoned where plaintiff did not oppose dismissal in her opposition to motion for summary judgment).

The Court recognizes, however, that "public policy favor[s] disposition of cases on their merits." *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998). Defendant is correct that Plaintiff has introduced no evidence raising a genuine dispute of material fact that any of the alleged conduct in Allegation I rises to the level of age-based or racial harassment as opposed to "[c]ommonly necessary personnel management actions." *Lawler*, 704 F.3d at 1244. Summary judgment is therefore proper. *See, e.g.*, *id.* (affirming district court's decision to grant summary judgment in favor of the defendant where the plaintiff alleged discrimination based on the defendant "question[ing] her appearance, criticiz[ing] the display of merchandise, instruct[ing] her to perform work-related assignments, and disagree[ing] with the way she stored repair parts"); *Velente-Hook v. E. Plumas Health Care*, 368 F. Supp. 2d 1084, 1103 (E.D. Cal. 2005) (granting summary judgment in favor of the defendant on the grounds that the plaintiff had failed to make a prima facie case of harassment).

### 2. *Conduct Described in Plaintiff's Deposition*

During his deposition, Plaintiff testified that Mr. Tran "liked to mock" Plaintiff regarding Plaintiff's age, "calling [him] . . . old man and over the hill," Collins Dep. at 61:1–15, although Mr. Tran stopped referring to him as "over the hill" in 2014, *id.* at 68:1–4, and "old man" in "March or April of 2015." *Id.* at 66:7–19. Plaintiff also testified that Mr. Thompson, who is black, *see id.* at 102:3, referred to white people as "crackers" and "honky," *id.* at 108:1–12, although Plaintiff did not hear him make such comments after 2012. *Id.* at 110:3–21.

Defendant contends that, "based on Plaintiff's deposition testimony, his only possible race or age-based harassment claim ended no later than April 19, 2015 (i.e., the date on which Tran was promoted to work leader." Def.'s Mot. at 7. "Plaintiff's hostile work environment claim, therefore, falls within the broad release of all employment-related

claims in his May 6, 2015 Settlement Agreement with the Navy," *id.*, which provided that "Complainant agrees to release the [Department of Navy] from any and all claims or demands he may have with the Agency occurring prior to the effective date of this Agreement, . . . [including] a release of any rights under Title VII of the Civil Rights Act of 1964 . . . ; [and] the Age Discrimination in Employment Act." *Id.* (quoting Def.'s Ex. 1 at 1 ¶ 3).

"Plaintiff acknowledges that a Settlement Agreement was signed by Plaintiff and [Fleet Readiness Center Southwest ("FRCSW")] on May 6, 2015, for EEO Case Nos. 14-65888-01141 and 15-65888-01875," but "Plaintiff has never been provided a copy of Case No. EEO 15-65888-01875 which was initiated on April 24, 2015," and therefore "request[s] that the Court grant the Plaintiff a copy of EEO 15-65888-01875 from the Defendant" pursuant to Rule 56(d).[2] *See* Opp'n at 10. In any event, "a claimant can[]not waive future claims (only settle past ones)." *Id.* at 13. Additionally, "Plaintiff lodged a formal complaint with FRCSW EEO declaring a breach of the Settlement Agreement" and "[n]o formal outcome or decision was ever reached." *Id.* Finally, Plaintiff has established a prima facie case of retaliation because he engaged in protected activity when he filed Case No. 15-65888-01875 on April 24, 2015, and suffered actionable injury when FRCSW failed to protect him from Mr. Tran's and Mr. Thompson's retaliatory actions. *Id.* at 12. A causal connection between the protected activity and the adverse employment action can also been seen by the temporal proximity between those events. *See id.* at 12. Mr. Tran

---

[2] To the extent Plaintiff seeks relief pursuant to Rule 56(d), that request is **DENIED**. Not only did Plaintiff himself initiate Case No. 15-6588-01875, but he has failed to "identify specific facts to be obtained in discovery that [a]re essential to oppose summary judgment." *See Leonard v. Baker*, 714 F. App'x 718, 719 (9th Cir. 2018) (citing *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008)). Further, "[t]he failure to conduct discovery diligently is grounds for the denial of a Rule 56([d]) motion." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) (citing *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 524 (9th Cir. 1989); *Landmark Dev. Corp. v. Chambers Corp.*, 752 F.2d 369, 372 (9th Cir. 1985)). Here, Plaintiff conducted no discovery, *see* Def.'s Mot. at 4; fact discovery closed on October 5, 2018, *see* ECF No. 18 ¶ 2; and Plaintiff waited five-and-a-half weeks after Defendant filed his Motion to request Case No. 15-6588-01875. Accordingly, additional discovery is neither needed nor warranted here.

17-CV-1723 JLS (KSC)

also admitted that he knew that Plaintiff "had multi[ple ]EEO complaints" and Mr. Thompson's denial that he was aware that Plaintiff had any prior EEO complaints or activity "is a blatantly implausible claim." *Id.* at 13.

Defendant responds that, "[c]onsistent with his deposition testimony, Plaintiff's Opposition does not present any evidence that he was subjected to any post-Settlement Agreement conduct that meets the elements of a hostile work environment claim." Reply at 1. The Court must agree with Defendant. By signing the Settlement Agreement, Plaintiff waived any claims based on retaliation, discrimination, or hostile work environment based on conduct predating the May 6, 2015 Settlement Agreement. *See* Def.'s Ex. 1 at 1 ¶ 3. Plaintiff has introduced no evidence that he was subjected to unwanted verbal or physical conduct of an age-related or racial nature after May 6, 2015.[3] Accordingly, Plaintiff has failed to raise a genuine issue of disputed fact as to his hostile work environment claim. *See, e.g.*, *Campbell v. Hagel*, 536 F. App'x 733, 734 (9th Cir. 2013) ("The district court properly granted summary judgment on [the plaintiff]'s discrimination and retaliation claims arising from events occurring before October 8, 2003, because those claims are

---

[3] Plaintiff argues in his Opposition—without introducing any supporting evidence—that Defendant breached the Settlement Agreement by providing a resume review session with Lydia Ensor rather than James Compagnon, the Aircraft Production Competency Leader, as specified in the Settlement Agreement. *See* Opp'n at 5–6, 10; *see also* Def.'s Ex. 1 at 2 ¶ 5(b). Not only has Plaintiff failed to introduce evidence in support of this argument, but the Court lacks jurisdiction to determine whether Defendant breached the Settlement Agreement, *see, e.g.*, *Munoz v. Mabus*, 630 F.3d 856, 864 (9th Cir. 2010); Def.'s Ex. 1 at 4 ¶ 7(b), and Plaintiff's only remedies would appear to be to "request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased," 29 C.F.R. § 1614.504(a), as opposed to rescission. Further, under California and Federal contract law, a partial breach does not give the non-breaching party the right to cancel the contract. *See, e.g.*, *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1289 n.12 (9th Cir. 2009) (under California law, material breach may allow non-breaching party to cancel the contract, while partial breach limits non-breaching party to damages); *Old Stone Corp. v. United States*, 450 F.3d 1360, 1371–72 (Fed. Cir. 2006) ("When one party commits a material breach of contract, the other party has a choice between two inconsistent rights—he or she can either elect to allege a total breach, terminate the contract and bring an action [for restitution], or, instead, elect to keep the contract in force, declare the default only a partial breach, and recover those damages caused by that partial breach.") (quoting 13 *Williston* § 39:32 (4th ed. 2000)). Accordingly, even if Plaintiff had introduced evidence that Defendant had breached the Settlement Agreement, the Court concludes that Defendant's purported breach does not preclude granting summary judgment in favor of Defendant.

waived by the settlement agreement.") (citing *Stroman v. W. Coast Grocery Co.*, 884 F.2d 458, 461–63 (9th Cir.1989)).

## B. Retaliation

"To establish a *prima facie* case of retaliation, a plaintiff must demonstrate: (1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006) (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994)). To establish an "adverse employment action," "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (internal quotation marks omitted). "[C]ausation sufficient to establish the third element of the prima facie case may be inferred from . . . the proximity in time between the protected action and the allegedly retaliatory employment decision." *Cornwell*, 439 F.3d at 1035 (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)). "Alternatively, the plaintiff can prove causation by providing direct evidence of retaliatory motivation." *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986).

"Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory explanation for the action." *Id.* (citing *Wrighten v. Metro. Hosps., Inc.*, 726 F.2d 1346, 1354 (9th Cir. 1984)). "To satisfy this burden, the employer 'need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981)) (citing *Lowe v. City of Monrovia*, 775 F.2d 998, 1007 (9th Cir. 1985)).

"If the employer successfully rebuts the inference of retaliation that arises from establishment of a prima facie case, then the burden shifts once again to the plaintiff to

17-CV-1723 JLS (KSC)

show that the defendant's proffered explanation is merely a pretext." *Id.* (citing *Wrighten*, 726 F.2d at 1354).

Defendant argues that, to the extent Plaintiff's Allegation I alleges retaliation (or discrimination), he "cannot prevail" because he has not established an adverse employment action. *See* Def.'s Mot. at 6 n.4. According to Defendant, "[n]either being placed under 'constant surveillance,' nor attempting to 'provoke the Plaintiff into a confrontation' constitute adverse employment actions." *Id.* (citing *Burlington N.*, 548 U.S. at 68; *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997)). "A Letter of Reprimand also does not constitute an adverse employment action unless it resulted in an employment consequence, which Plaintiff does not allege here." *Id.* (citing *Thomas v. Spencer*, 294 F. Supp. 3d 990, 999–1000 (D. Haw. 2018)). Further, "Plaintiff admitted to engaging in the conduct that formed the basis of the censure." *Id.* (citing Collins Dep. at 134:23–137:11).

Again, Plaintiff does not respond to Defendant's argument, *see generally* Opp'n, thereby waiving any retaliation (or discrimination) claims alleged in Allegation I. *See, e.g.*, *Jenkins*, 398 F.3d at 1095 n.4. Nonetheless, considering Defendant's Motion on the merits, the Court must agree with Defendant that Plaintiff has failed to establish a *prima facie* case by failing to introduce evidence of an adverse employment action.[4]

In certain circumstances, surveillance can be an adverse employment action. *See, e.g.*, *Marceau v. Idaho*, No. 1:09-CV-00514-N-EJL, 2011 WL 3439178, at *13 (D. Idaho Aug. 5, 2011) (concluding the plaintiff established that she had been subject to an adverse employment action because "targeted surveillance of an employee might reasonably deter that employee from engaging in protected activity, especially when the employee believes, as [the plaintiff] did, that the surveillance is being conducted specifically for the purpose of 'justifying [the employee's] termination'"); *but cf. Mendoza v. Sysco Food Servs. of*

---

[4] To the extent Plaintiff's Allegation I alleges a claim for discrimination, that claim would fail for the same reason. *See Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000) (requiring a plaintiff claiming employment discrimination to demonstrate that "he was subject to an adverse employment action").

*Ariz., Inc.*, 337 F. Supp. 2d 1172, 1192 (D. Ariz. 2004) ("[U]nder the Ninth Circuit analysis, [surveillance] does not itself qualify as an adverse employment action."). Here, however, Plaintiff introduces no evidence of subsequent discipline resulting from the increased surveillance. *See Yartzoff*, 809 at 1377. Similarly, it is possible that "provocation efforts [could] amount to a 'pattern of antagonism' that could constitute an adverse employment action," *see Negley v. Judicial Council of Cal.*, 458 F. App'x 682, 685 (9th Cir. 2011), but Plaintiff testified at his deposition that Mr. Tran acted similarly "with quite a few other people," *see* Collins Dep. at 54:20–24, and "had a tendency to do that to everybody." *See id.* at 56:7–13. Finally, Defendant is correct that a letter of reprimand does not constitute an adverse employment action where, as here, Plaintiff has failed to introduce any evidence that the letter of reprimand resulted in any employment consequences.[5] *See, e.g.*, *Thomas*, 294 F. Supp. 3d at 999–1000 (granting summary judgment in favor of the defendant where the plaintiff "d[id] not provide any evidence that there was any other employment consequence as a result of the reprimand letter" and the plaintiff did not dispute that he engaged in the conduct forming the basis of the reprimand). Accordingly, the Court concludes that Plaintiff has failed to adduce evidence establishing a *prima facie* case of retaliation based on the allegations contained in Allegation I of his First Amended Complaint.

## III. Allegation II

In Allegation II, Plaintiff alleges claims for discrimination and retaliation. *See* FAC at 1–2, 4–7. The Court outlined the elements for a retaliation claim above. *See supra* Section II. "[A] plaintiff alleging disparate treatment under Title VII . . . must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his

---

[5] Plaintiff has not alleged—much less introduced evidence supporting—that the Letter of Reprimand in any way contributed to his non-selection for the permanent Aircraft Examiner position. In any event, Plaintiff also has failed to raise a dispute of material fact that the Navy did not use a blinded review of resumes against a pre-determined set of criteria in evaluating the Aircraft Examiner applicants. *See infra* Section III.A.

protected class were treated more favorably." *Chuang*, 225 F.3d at 1123 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  To establish an "adverse employment action," the plaintiff must demonstrate "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (citing *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).  "The burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang*, 225 F.3d at 1123–24 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).  "If the employer does so, the plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* at 1124 (quoting *Burdine*, 450 U.S. at 256).

## A. *Discrimination and Retaliation in Non-Selection as Aircraft Examiner*

Plaintiff alleges that he was not selected for the permanent Aircraft Examiner position as a result of racial and age-based discrimination and retaliation for his prior EEO activity.  *See* FAC at 4–7.  Defendant contends that "[t]he undisputed facts establish that the Navy had legitimate, nondiscriminatory reasons for selecting another candidate for th[e Aircraft Examiner] position, which Plaintiff cannot establish were pretexts for discrimination or retaliation." Def.'s Mot. at 9–10.  This is because "[t]he Navy followed an established, objective, and documented procedure for evaluating the numerous applicants for the Aircraft Examiner position." *Id.* at 10.  Specifically, "the Navy based its selections for the Aircraft Examiner position on a blind review of resumes against objective, pre-determined evaluation criteria." *Id.* at 11.  Plaintiff cannot "demonstrate that the Navy's selection procedure was somehow a pretext for discrimination," *see id.* (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)), because Plaintiff admitted he had no such proof at his deposition:

/ / /

Plaintiff admitted in his deposition that he has no evidence that his non-selection had anything to do with his age or race:

> Q. Other than the age difference, do you have any other facts to show they chose Mr. Bui over you because of Mr. Bui's age?
>
> A. No.
>
> Q. Do you have any reason to believe they did not choose you because you're white?
>
> A. I have no – no.

*Id.* at 11–12 (quoting Collins Dep. at 148:4–10). According to Defendant, "Plaintiff also cannot establish that the Navy's selection procedure was a pretext for retaliation" because only one member of the Advisory Panel, Mr. Amaichigh, "recognized [Applicant K's] resume as likely belonging to Plaintiff[] and was generally aware that Plaintiff had some prior EEO activity, [although] Mr. Amaichigh did not know any of the details of Plaintiff's prior EEO activity because he was not involved in it." *Id.* at 12 (citing Decl. of Robert Amaichigh ("Amaichigh Decl.," ECF No. 21-7) ¶ 7). "And[,] further confirming that Mr. Amaichigh was not motivated by any retaliatory animus, he gave Plaintiff's resume a higher overall score than the other two members who did not recognized Plaintiff's resume and knew nothing about Plaintiff's EEO activity." *Id.* (citing ECF Nos. 21-20, 21-22, 21-24).

Plaintiff counters that "[t]he selection process used is simply a resume writing contest" and "[n]o independent verification of applicants['] claims to knowledge or skills is conducted." Opp'n at 16. Further, "[p]oints given during the resume grading and scoring process are totally subjective" and "[n]o interviews were conducted." *Id.* "Plaintiff[] adamantly disputes the Defendant's claim that the resume grading and scoring process was performed by the panel members anonymously" or that the selection process was "platform specific." *Id.* at 16–17. "Plaintiff claims [Mr.] Amaichigh unequivocally knew which redacted resume belonged to the Plaintiff and due to a close association with Gary

Thompson . . . [and Mr.] Amaichigh was made aware of the details of Plaintiff's prior EEO activity by [Mr.] Thompson." *Id.* at 18. Further, Mr. "Amaichigh manipulated the selection process to ensure that the preferred applicant was selected." *Id.* "The selecting official for this selection was Fredrick Asuncion[,] who was also the selection official in one of Plaintiff's prior EEO complaints[,] Case No. 14-65888-01141." *Id.* at 19. "[O]nly 3 applicant resumes out of a total of 33 were identified and placed in the H-53 platform category," so "it would not take a rocket scientist to figure out who's resume belonged to whom," especially given "that the Advisory Panel members were provided a list of the applicant[s'] names to review before the process began." *Id.* at 21. Further, Mr. "Amaichigh's Resume Grading Worksheet[]" contains "the hand-written names of the applicants who were selected" and Mr. Asuncion "is vague . . . in regard to when and how the Advisory Panel w[as] made cognizant of the applicant[s'] redacted names," leading Plaintiff to "question[] the validity of the selection process in regard to when and how the Advisory Panel members are revealed the redacted names." *Id.* at 22. Based on Defendant's Exhibit 16, Plaintiff also "claims . . . Tien Bui (applicant D) was recommended for an Aircraft Examiner position for the V22 platform," which "is a total contradiction to all the requirements for this position and that of the Declarations/Affidavits of all the Advisory Panel members." *Id.* at 24.

Defendant rejoins that Plaintiff has introduced no evidence that the resume review process was manipulated or that the resumes were not evaluated anonymously. Reply at 3. Further, "Plaintiff's argument that Mr. Bui was ultimately assigned to the V22 Vertical Lift platform does not demonstrate that the Navy's blind resume review procedure was a pretext for discrimination." *Id.* at 4.

Assuming Plaintiff has established a *prima facie* case for discrimination based on race and age and retaliation for his prior EEO activity, Defendant has articulated legitimate, nondiscriminatory reasons for selecting Mr. Bui for the Aircraft Examiner position. Here, the applicants' resumes were graded based on five criteria: knowledge of program cell based process and procedures; teaming skills and ability to communicate; working

knowledge and application of management information systems; knowledge of safety, environmental, and personal protective equipment policies and procedures, safety regulations, FOD, tool control, hydraulic contaminations, MSDS, Fall Protection, etc.; and knowledge of technical data including schematics, blueprints, engineering specifications, REI/TEI, technical directives, wiring diagrams, AFB's/AFC's/AYC's and maintenance manuals. *See generally* Def.'s Ex. 5, ECF No. 21-16. Each resume was awarded points from three Advisory Panel members based on these criteria, *see* Def.'s Ex. 9, ECF No. 21-20; Def.'s Ex. 11, ECF No. 21-22; Def.'s Ex. 13, ECF No. 21-24, and the three Advisory Panels then met to assign a consensus score for each applicant. *See* Decl. of Frederick Asuncion ("Asuncion Decl.," ECF No. 21-6) ¶ 6. Plaintiff received a consensus score of 45, which Mr. Asuncion raised to 55 but which was still 15 points lower than Mr. Bui's consensus score. *See id.* ¶ 10. Because Mr. Bui was the top-ranked candidate for the specific platform for which he and Plaintiff were competing, Mr. Asuncion selected Mr. Bui for the position. *See id.*; *see also* Affidavit of Frederick Asuncion ("Asuncion Aff.," ECF No. 21-18) at 4–5.

The burden therefore shifts to Plaintiff to "show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang*, 225 F.3d at 1124 (quoting *Burdine*, 450 U.S. at 256); *accord Miller*, 797 F.2d at 731. Based on a review of the record, the Court concludes that Plaintiff has failed to meet this burden.

As for discrimination, Plaintiff has introduced no evidence—aside speculation based on the fact that he is white and older than Mr. Bui, who is Vietnamese—to demonstrate that his non-selection was the result of discrimination. *See* Collins Dep. at 148:4–10; *Risby v. Nielsen*, 768 F. App'x 607, 611 (9th Cir. 2019) ("Plaintiff's speculation [that his employer acted on account of race] is insufficient to defeat summary judgment.") (citing *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016)). Further, neither Mr. Baesas nor Mr. Pendleton recognized Applicant K's resume as belonging to Plaintiff during the resume

review. *See* Decl. of Joey Baesas ("Baesas Decl.," ECF No. 21-8) ¶ 7; Decl. of Matt Pendleton ("Pendleton Decl.," ECF No. 21-9) ¶ 6. And while Mr. Amaichigh recognized Applicant K's resume as "likely belonging to" Plaintiff, *see* Amaichigh Decl. ¶ 7, he "did not recognize the resume of Applicant D as belonging to Mr. Bui" and, "[i]n fact, . . . did not know who he was." *Id.* ¶ 9. Further, Mr. Amaichigh also gave Plaintiff's resume a score of 55, *see id.* ¶ 10, which was higher than the score of 50 give by Mr. Baesas, *see* Baesas Decl. ¶ 10, or of 40 given by Mr. Pendleton. *See* Pendleton Decl. ¶ 9.

Similarly, Plaintiff has introduced no evidence—aside speculation—that his non-selection was the result of retaliation for his prior EEO activity. The Selecting Officer and each Advisory Panel member has testified—for the majority, multiple times—that, to the extent they even knew about Plaintiff's prior EEO activity,[6] it played no role in the recommendation or selection of applicants for the Aircraft Examiner position. *See* Asuncion Aff. at 6–7 ("[Mr. Asuncion] was aware of Mr. Collins' prior EEO activity, but that knowledge played no role in [his] selection decisions."); Amaichigh Decl. ¶ 7 ("[Mr. Amaichigh . . . knew that Mr. Collins had some prior EEO activity, but [he] did not know any of the details of his prior EEO activity because [he] was not involved in it."); Affidavit of Robert Amaichigh ("Amaichigh Aff.," ECF No. 21-19) at 5 (Mr. Amaichigh's "knowledge of Mr. Collins' prior EEO activity [was] in [no] way a factor in [his] evaluation of his application or his ranking score"); Baesas Decl. ¶ 7 ("[Mr. Baesas] . . . had no knowledge that Mr. Collins had participated in any EEO activity."); Affidavit of Joey Baesas ("Baesas Aff.," ECF No. 21-21) at 5 (Mr. Baesas was not "aware of Mr. Collins' prior involvement in protected EEO activity at the time of the selection process" and his signing of his affidavit on June 27, 2016, was "the first [he] ha[d] heard that Mr. Collins had any prior EEO activity"); Pendleton Decl. ¶ 6 ("I had never met Mr. Collins and knew nothing about his EEO activity."); Affidavit of Matt Pendleton

---

[6] As mentioned above, two of the Advisory Panel members did not recognized Applicant K's resume as belonging to Plaintiff and, therefore, would not have associated it with Plaintiff's prior EEO activity.

17-CV-1723 JLS (KSC)

("Pendleton Aff.," ECF No. 21-23) at 7 (Mr. Pendleton was not "aware of Mr. Collins' race, national origin, color, age or prior participation in protected EEO activity at the time of the Advisory Panel's process" and "factors such as race, national origin, color, age, or prior EEO activity [were not] in any way considered by the Advisory Panel"). Plaintiff's speculation that Mr. Amaichigh had learned details of his prior EEO activity from Mr. Thompson and that Mr. Asuncion's selection of Mr. Bui over Plaintiff was influenced by Plaintiff's prior EEO activity are contradicted by the evidence. *See, e.g.*, Asuncion Aff. at 6–7 ("[Mr. Asuncion] was aware of Mr. Collins' prior EEO activity, but that knowledge played no role in [his] selection decisions."); Amaichigh Aff. at 4 (Mr. Amaichigh "was aware Mr. Collins had some EEO activity previously, but [he] was not involved in the matter" and "d[id] not know the details of his previous EEO matter").

Accordingly, Plaintiff has failed to raise a triable issue of material fact that the resume review and selection process for the Aircraft Examiner position was a pretext for race or age-related discrimination or retaliation for his prior EEO activity.

### B. Discrimination and Retaliation in Cancellation of Training

Plaintiff also contends that Mr. Amaichigh "intentionally excluded" Plaintiff from a November 13, 2015 training session because Mr. Amaichigh "was cognizant to the fact that Tien Bui has been selected over the Plaintiff for the position of Aircraft Examiner." FAC at 6.

Defendant first contends that "the cancellation of training is not a legally cognizable adverse employment action." Def.'s Mot. at 13 (citing *Burlington Indus.*, 524 U.S. at 761; *Brooks v. Firestone Polymers, LLC*, 640 Fed. App'x 393, 397 (5th Cir. 2016) (unpublished); *Del Castillo v. Dep't of Health & Human Servs.*, 304 Fed App'x 607, 609 (9th Cir. 2008) (unpublished); *Roberson v. Game Stop/Babbage's*, 152 Fed. App'x 356, 361 (5th Cir. 2005) (unpublished)). "Regardless, the Navy had a legitimate, nondiscriminatory reason for informing Plaintiff that he could not participate in the computer training: he did not have the necessary log-in and password to access the training system platform on which the trainees needed to work during the training." *Id.* (citing

Amaichigh Aff. at 6–7). And, to the extent Plaintiff claims that he was denied the training because management already knew that he had not been selected for the Aircraft Examiner position, his cancellation of training claim must fail for the same reasons as his non-selection claim. *Id.* at 13–14.

Plaintiff responds that Mr. "Amaichigh's reasons [for telling Plaintiff not to attend the training] stated in his Affidavit . . . are simply a pretext to deflect and conceal his retaliatory animus directed squarely at the Plaintiff." Opp'n at 25. This is because the training was slide-based and "Plaintiff could have participated in the slide-based training by using Plaintiff's personal [Common Access Card]." *Id.* In any event, "Plaintiff would have benefitted from the training in regards to future opportunities." *Id.* at 25–26. Further, Mr. "Amaichigh . . . knew . . . that the Plaintiff was not recommended for the [Aircraft Examiner] position, and arbitrarily decided to deny the training course in unadulterated retaliatory animus." *Id.* at 26.

Defendant replies that Plaintiff has waived his cancellation of training claim by failing to dispute in his Opposition that cancellation of training is not a legally cognizable adverse employment action. *See* Reply at 5. Further, Ms. Sexton, who was responsible for the training, informed Mr. Amaichigh that "it would not make sense for someone who did not have either an MRO log-in, a Made to Order (MTO) log-in, or a completed background investigation to attend." *Id.* (quoting Sexton Aff. at 3). Further, "it would not make sense to have someone attend the training if they did not have an MTO log-in at that time, as they would then be spending time being trained on a system that they could not actually use." *Id.* at 6 (quoting Sexton Aff. at 3).

"[E]xclu[sion] from meetings, seminars and positions that would have made [the employee] eligible for salary increases" may qualify as an adverse employment action. *See Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000) (citing *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869 (9th Cir. 1996)). Here, Plaintiff claims only that he "would have benefitted from the training in regards to future opportunities," offering no evidence as to what benefits the training may have conferred. Opp'n at 25–26. Under

these circumstances, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact that the denial of training was an adverse employment action.

Even if Plaintiff had made such a showing, however, Ms. Sexton's affidavit establishes a legitimate, nondiscriminatory reason for the cancellation of Plaintiff's training: Ms. Sexton, whom Plaintiff neither alleges nor establishes had discriminatory or retaliatory animus toward him, informed Mr. Amaichigh that it would "not make sense" for Plaintiff to participate in the training because he would "be spending time being trained on a system that [he] could not actually use." Sexton Aff. at 3. Plaintiff has introduced no evidence that Ms. Sexton discriminated against him based on his age or race or that she retaliated against him because of his prior EEO activity and, in any event, Ms. Sexton has affirmed that she was not "aware of Mr. Collins' race, national origin, color of age (Caucasian, American, white, born 1951), or of Mr. Collins having previously participated in protected EEO activity, at the time of [her] consultations with Mr. Amaichigh regarding the training in question." *Id.* at 4. Accordingly, Plaintiff has failed to raise a genuine issue of material fact that his exclusion from the November 15, 2015 training was a pretext for discrimination or retaliation.

### C.   *Discrimination and Retaliation in All-Hands Meeting*

Finally, Plaintiff claims that, "[o]n November 17, 2015, . . . [Mr.] Amaichigh willfully embarrassed and humiliated the Plaintiff in front of co-workers when[,] during an all-hands meeting[, he] informed staff that Tien Bui had been selected for the position of Aircraft Examiner." FAC at 6.

Defendant contends that Mr. Amaichigh's announcement "fails to constitute an adverse employment action because it did not result in any harm apart from the selection decision itself, which Plaintiff cannot establish was discriminatory or retaliatory." Def.'s Mot. at 14 (citing *Ellerth*, 524 U.S. at 761). Plaintiff responds that, "[w]ithout any consideration for the Plaintiff's feelings in a completely malicious act Amaichigh proceeded to embarrass and further humiliate the Plaintiff in front of his co-workers." Opp'n at 26. Defendant replies that "[h]urt feelings, embarrassment, and humiliation . . .

do not satisfy the 'adverse employment action' requirement." Reply at 6 (citing *Nguyen v. McHugh*, 65 F. Supp. 3d 873, 893 (N.D. Cal. 2014), *aff'd*, 722 Fed. App'x 688 (9th Cir. 2018)). "Moreover, Plaintiff presents no evidence establishing that this all-hands meeting was convened for the purpose of discriminating or retaliating against him." *Id.* at 7.

The Court sympathizes with Plaintiff, but Defendant is correct: "While [Plaintiff] alleges he was humiliated and demeaned by [Mr. Amaichigh]'s conduct at the . . . meeting, the circumstances of that meeting, standing alone, are insufficient to establish a materially adverse employment action." *Young Bolek v. City of Hillsboro*, No. 3:14-CV-00740-SB, 2016 WL 9455411, at *13 (D. Or. Nov. 14, 2016) (citing *Hellman v. Weisberg*, 360 F. App'x 776, 779 (9th Cir. 2009); *Cates v. PERS of Nev.*, 357 Fed. App'x 8, 10 (9th Cir. 2009); *Bollinger v. Thawley*, 304 Fed. App'x 612, 614 (9th Cir. 2008)), *report and recommendation adopted*, 2017 WL 627218 (Feb. 13, 2017); *Hammond v. Lynwood Unified Sch. Dist.*, No. CV0705039DDPCTX, 2008 WL 11337726, at *3 (C.D. Cal. Dec. 3, 2008) ("Plaintiff's expression of humiliation is not sufficient to demonstrate an adverse employment action."); *see also Pickard v. City of Tucson*, No. CV-16-00729-TUC-RCC, 2019 WL 1130095, at *7 (D. Ariz. Mar. 12, 2019) ("Embarrassment [and] harm to reputation . . . d[oes] not impact the terms or conditions of [ ] employment and are likewise not adverse employment action.") (collecting cases).

Further, Plaintiff has introduced no evidence beyond a conclusory statement in his declaration that Mr. Amaichigh acted with a discriminatory or retaliatory motive in convening the all-hands meeting. *Compare* Amaichigh Aff. at 6 ("[A]ssuming that [Mr. Amaichigh] did in fact eventually announce Mr. Bui's selection after a final selection decision had been made by the Competency Manager, [his] motivation for doing so would have been to keep [his] employees advised of the changes to [the Navy's] staff and to ready them to assist in training a new staff member. There would have been no intention whatsoever to embarrass or humiliate Mr. Collins."), *with* Collins Decl. ¶ 12 ("On November 17, 2015[,] in front of [Plaintiff's] co-workers[, Plaintiff] was embarrassed[] and humiliated without any consideration for [his] feelings by Robert Amaichigh in

retaliatory animus directed squarely at [Plaintiff].").  "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."  *Himaka v. Buddhist Churches of Am.*, 917 F. Supp. 698, 704 (N.D. Cal. 1995) (citing *Falls Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49 (2nd Cir. 1985); *Thornhill Pub. Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979)).  Consequently, even if Plaintiff had established a materially adverse employment action, Mr. Amaichigh has introduced evidence of a non-discriminatory and non-retaliatory reason for the meeting (i.e., advising his employees of a staffing change), and Plaintiff has failed to introduce any evidence that Mr. Amaichigh's proffered reason was pretextual. Accordingly, summary judgment is appropriate.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Plaintiff's Request for Oral Argument (ECF No. 26), **OVERRULES** Plaintiff's Evidentiary Objections (ECF Nos. 24-2–5), and **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 21).  Accordingly, the Clerk of the Court **SHALL CLOSE** the files for Case Nos. 17-CV-1723 JLC (KSC) and 17-CV-1724 JLS (KSC).

**IT IS SO ORDERED.**

Dated:  January 30, 2020

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge